Electronically Filed by Superior Court of California, County of Orange, 09/05/2019 09:01:53 PM.
DAVID H. YAMASAKI, Clerk of the Court By Brenda Sanchez, Deputy Clerk. 30-2019-01095975-CU-WT-NJC ROA # 2

TRACY NEAL-LOPEZ (SBN 225367)
NEAL-LOPEZ LAW GROUP, PC
111 W. Ocean Blvd., Suite 400
Long Beach, CA 90802
Tel: (562) 216-8140
Fax: (562) 473-4544

Attorneys for Plaintiff, CAMILLE RODRIGUEZ

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ORANGE** Judge Craig Griffin

| | |
|---|---|
| CAMILLE RODRIGUEZ, an Individual;<br><br>Plaintiff,<br><br>v.<br><br>ZL – WEST ENGINEERING PLACSTICS, INC., a California corporation; and DOES 1 through 25, Inclusive,<br><br>Defendants. | **CASE NO.** 30-2019-01095975-CU-WT-NJC<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR:**<br><br>**1. DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**<br>**2. FAILURE TO PREVENT DISCRIMINATION AND RETALIATION;**<br>**3. RETALIATION FOR COMPLAINTS OF DISCRIMINATION IN VIOLATION OF FEHA;**<br>**4. VIOLATION OF LABOR CODE § 1102.5; AND**<br>**5. WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Camille Rodriguez, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by Plaintiff, Camille Rodriguez ("Plaintiff" and/or "Rodriguez"), whose employment with ZL – West Engineering Plastics, Inc. was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgement interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

## PARTIES

1. Plaintiff, Camille Rodriguez, is, and at all times mentioned in this Complaint was, a resident of the County of Orange, California.

2. Defendant ZL – West Engineering Plastics, Inc. (hereinafter "ZLW"), is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Orange. Defendant's place of business, where the following causes of action took place, was and is in the County of Orange, 8485 Artesia Blvd., Unit D, Buena Park, California 90621.

3. Defendants Does 1 through 25 are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes thereafter referred to, collectively and/or individually, as "defendants."

4. All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California

Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following basis: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision of, one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between two or more of the defendants such that any individuality and separateness of defendants does not, and at all times herein mentioned did not exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved by all other defendants.

5. Defendant ZLW directly and indirectly employed Plaintiff, as defendant under the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

6. In addition, defendant ZLW compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

7. At all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

**FACTS COMMON TO ALL CAUSES OF ACTION**

8. Plaintiff, Camille Rodriguez was employed by defendants from November 21, 2016 to September 6, 2017, when she was terminated. She was hired as an Inside Sales Representative. Rodriquez' duties included, among other things, making sure all orders that were shipped and picked up were invoiced, give quotes to customers, prepare/process Certifications of Conformance, enter orders, follow up on calls for add-on's to back orders. During Rodriguez' employment with ZLW, she was the only female Inside Sales Representative. At all times, Rodriguez performed her job duties in an exemplary manner.

9. During the week of on or about January 30 , 2017 Patrick Pheffer ("Pheffer"), ZLW President, who is based out of the ZL Kansas office, was at ZLW. Monique, from the Kansas office, called Rodriquez and told her to call a customer to ask him if it was okay for ZLW to declare the value of the material being sent to him via UPS or if he had an amount that he wanted ZLW to declare. Rodriquez asked the customer verbatim what Monique had instructed her. Apparently, Pheffer overheard Rodriguez' telephone conversation with the customer; after Rodriguez hung up the phone, Pheffer approached her and yelled at her that he did not like the explanation that she gave the customer regarding the UPS declare value. In front of Rodriquez' co-workers, all of whom are male, Pheffer stood directly in front of Rodriguez, about 2-feet away from her, and yelled at her that she sounded unprofessional on the telephone, that she should have used different words when speaking with the customer (without giving any examples), and that she needed more training. To ensure that Rodriguez could hear him, Pheffer yelled "I am fucking talking and you better fucking listen or you are going to find yourself out the door." Rodriguez was visibly shaken and upset by Pheffer's conduct and rage he directed toward her. As such, she asked if she could take her lunch break; she was reduced to tears, felt singled out, humiliated, embarrassed and belittled by Pheffer. When Rodriguez returned from lunch, Pheffer sat at a desk near Rodriguez, turned his chair to face her direction and watched her while she worked. Rodriguez felt intimidated and stressed by Pheffer's demeanor.

10. Later that week, Pheffer left and went back to ZL in Kansas. Rodriguez immediately reported to her Manager, Damien Myers ("Myers"), that she felt singled out, humiliated, degraded and belittled by Pheffer.

11. On or about February 1, 2017, Tina Resch ("Resch ") from Human Resources ("HR") emailed Rodriguez in response to Myers' complaint to HR on behalf of Rodriguez, that Pheffer is hostile toward Rodriguez and that she is very upset.

12. On or about February 2, 2017, Pheffer and Eric Giesen ("Giesen"), Operations Manager of ZLW and ZL in Kansas, telephoned Rodriguez to discuss her grievances regarding Pheffer's conduct. They made excuses for Pheffer's bad behavior; Giesen told Rodriguez that she

was doing a good job. Later, Giesen telephoned Rodriguez and told her that "Patrick is Patrick" and to essentially blow off his bad behavior.

13. During the week of on or about March 6, 2017, Pheffer came to ZLW to supposedly meet with customers that week. However, he was in the office most of the time. Again, Pheffer tried to find fault with only Rodriguez' work. He went through back orders and inquired why she does not do back orders like they do it at the Kansas office. Myers intervened and told Pheffer that he is the one who handles the back orders; Pheffer dropped the issue. Rodriguez got the impression that if it had been her who handled the back orders, Pheffer would have berated her.

14. Pheffer then sat at a desk near Rodriguez' and again turned his chair to face her and watch her every move. Rodriguez was on a call with a customer; she put the customer on hold to ask Myers a question. Pheffer quickly said to Rodriguez "let me show you how it's done." He picked up one of the telephone lines without verifying that he was talking to the right customer, and in an arrogant tone, with a smirk on his face, he proceeded to tell the customer wrong information. It was not until he hung up the phone did he realize that he was talking to the wrong customer. Rodriguez believes that Pheffer attempted to paint her in a bad light with the customer and make her appear as though she did not know what was doing – the dumb female sales representative. The customer Pheffer spoke to later told Rodriguez that he had no idea what Pheffer was talking about and found it odd.

15. The following day on or about March 7, 2017, Rodriguez was less than five minutes late for work. When she arrived she found Pheffer sitting at her desk. Pheffer then got up from Rodriguez' desk to greet a former employee, Luis, who returned to work for ZLW. Pheffer welcomed Luis back and said that he missed him. Pheffer introduced Luis to Rodriguez; he told Luis "this is Camille, she is scary" and laughed. Rodriguez was offended by his comment and embarrassed. Thereafter, when Luis was not at his desk, Pheffer sat at his desk and turned his chair to face Rodriguez and watch her.

16. Pheffer returned to ZLW during the week of March 19, 2017, and again singled out Rodriguez by trying to find fault in her work performance. Myers contacted Giesen and expressed that when Pheffer is at ZLW he creates a hostile work environment, which causing Rodriguez a

great deal of stress. Rodriguez was informed that Pheffer was asked not to go back to ZLW for a while.

17. On or about July 19, 2017, Pheffer called Rodriguez to inquire about the inventory of certain material. Curiously, Pheffer could access the inventory via computer; there was no need to call Rodriguez. As Pheffer was describing the material, he became irate over the telephone and started yelling at her. Telling her "why aren't you writing this down, don't you write anything down." Rodriguez confirmed that she did write it down and what he wanted was not in stock. Rodriguez reported the incident to Myers; he checked her notebook and saw for himself that she correctly wrote down the information in her notebook.

18. A few hours later, Giesen called Myers and told him that Rodriguez was not writing in her notebook. Myers defended Rodriguez and said that he is looking at her notebook and that she takes a lot of notes, and that she wrote down what Pheffer had inquired about. Thereafter, Rodriguez was ridiculed and treated differently by the Kansas ZL office.

19. On or about August 11, 2017, Giesen telephoned Rodriguez to discuss an error that she supposedly made. Subsequently, ZLW employees were informed that Giesen and Pheffer will be at the ZLW office on August 14, 2017 to discuss some issues, which could result in write-ups. Rodriguez felt singled out and believed that the real reason that they were coming out to ZLW was to only write her up. Rodriguez expressed her concerns to Geisen.

20. On or about August 29, 2017, Rodriguez was the only one in the office and was tasked with handling all of the customer calls and orders. The ZL Kansas office was supposed to assist her with the calls, but they only assisted her with a couple of calls, which they reached out to her via email with questions; they were of no assistance. Rodriguez expressed that she had been at work for over six hours with no breaks and was feeling dizzy. She also expressed that she is stressed and in fear of doing anything wrong because a few weeks prior Pheffer said that she is on a short leash.

21. On or about August 30, 2019, Myers reported to HR that he believed Pheffer violated Rodriguez' right to privacy by logging onto her computer when she was not in the office and going through her emails and notebook. None of which he did to Rodriguez' male coworkers. HR said

that it was okay for Pheffer to access her computer. Rodriguez responded in kind to HR's email stating that she (Resch) is obviously taking the issue lightly, that she has concerns regarding her job security and that she feels she is being retaliated against because she previously complained about being singled out by Pheffer, among other things.

22. On or about September 1, 2017, Rodriguez did not report to work due to the severe stress she was subjected to because of her workplace environment.

23. On or about September 1, 2017, Myers informed ZLW that he was resigning from ZLW effective September 14, 2017. He informed ZLW that reason for his resignation is because of the "continuous misconduct as well as hostile work environment created by the ZL President."

24. Interestingly, on or about September 5, 2017, Rodriguez was informed that her position was going to be eliminated and that all inside sales representative duties were going to be transferred to ZL in Kansas, and that if she wanted to transfer to Kansas, ZLW would have to make her a formal offer; that is if she was interested. The following day Rodriguez inquired if ZLW was going to make her a formal offer to transfer to Kansas. Rodriguez was informed that ZLW was still working on it and would get back to her soon. Rodriguez expressed her frustrations to Giesen and requested to have a telephone conference with Resch in HR. After the telephone conference, Rodriguez was asked to go home for the day. At 3:34 p.m. on September 6, 2017, Rodriguez received an email from Resch informing her that she is laid off, which Rodriguez believes is under the guise that her position was moved to Kansas. However, none of Rodriguez' male coworkers were laid off.

25. As a consequence of defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, and penalties in a sum to be proven at trial.

26. As a consequence of defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish in a sum to be proven at trial.

27. Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles Plaintiff to an award of exemplary and/or punitive damages.

a. Malice. Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by terminating Plaintiff's employment and/or taking other adverse job actions against Plaintiff because of her disability and gender, and/or good faith complaints and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of Plaintiff's rights, health, and safety, including Plaintiff's right to be free of discrimination, harassment, retaliation, and wrongful employment termination.

b. Oppression. In addition, and/or alternatively, defendant's conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against Plaintiff because of her disability and gender, and/or good faith complaints were "despicable" and subjected Plaintiff to cruel and unjust hardship, in knowing disregard of Plaintiff's rights to a work place free of discrimination, harassment, retaliation and wrongful employment termination.

c. Fraud. In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating Plaintiff's employment and/or other adverse job actions, thereby to cause Plaintiff hardship and deprive her of legal rights.

28. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

29. Before filing this action, Plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter.

///

///

///

**FIRST CAUSE OF ACTION**

**(Violation of FEHA (Government Code § 12900, *et. seq.*)**

**(Discrimination on the Basis of Gender) – Against Defendant ZLW, and Does 1-25)**

30. Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the Complaint as if fully set forth herein.

31. Plaintiff's gender and/or characteristic(s) protected by FEHA, Government Code section 12900, et. seq., were motivating factors in defendants' decision to not retain, hire or otherwise employ Plaintiff in any position, and/or take other adverse employment actions, including failure to promote, against Plaintiff.

32. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, et. seq. and defendants' committed unlawful employment practice(s), including, without limitation, by the following, separate bases of liability:

a. Barring, discharging, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's gender and/or other protected characteristics, in violation of Government Code section 12940(a);

b. Failing to take all reasonable steps to prevent discrimination, harassment, and/or retaliation based on gender, in violation of Government Code section 12940(k).

33. As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

34. As a proximate result of defendants' willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

35. As a proximate result of defendants' willful, knowing, and intentional discrimination, Plaintiff has suffered humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

36. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs), in an amount according to proof.

37. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, entitling Plaintiff to punitive damages against defendants.

**SECOND CAUSE OF ACTION**

**(Violation of FEHA (Government Code § 12940(k))**

**(Failure to Prevent Discrimination and Retaliation**

**– Against Defendant ZLW, and Does 1-25)**

38. Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the Complaint as if fully set forth herein.

39. At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Prior to filing the instant Complaint, Plaintiff filed a timely administrative charge with the with DFEH, and received a right-to-sue.

40. During the course of Plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of Plaintiff's protected status (*i.e.*, her gender). During the course of Plaintiff's employment, defendants failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes. During the course of Plaintiff's employment, defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the basis of gender, and/or other protected statuses or protected activities.

41. Plaintiff believes and on that basis, alleges that her gender, and/or other protected status and/or other protected activity were substantial motivating factors in defendants' employees' discrimination and retaliation against her.

42. As a proximate result of defendants' willful, knowing, and intentional misconduct of Plaintiff, Plaintiff has sustained substantial losses of earnings and other employment benefits.

43. As a proximate result of defendants' willful, knowing, and intentional misconduct of Plaintiff, Plaintiff has suffered humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

44. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

45. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, entitling Plaintiff to punitive damages against defendants.

**THIRD CAUSE OF ACTION**

**(Violation of FEHA (Government Code § 12900, *et seq.*)**

**(Retaliation for Complaining of Discrimination– Against Defendant ZLW, and Does 1-25)**

46. Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the Complaint as if fully set forth herein.

47. Plaintiff's gender is a characteristics protected by FEHA, Government Code section 12900, *et. seq.*, were motivating factors in defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff.

48. Defendants' conduct, as alleged violated FEHA, Government Code section 12900, *et. seq.*, and defendants committed unlawful employment practices, including by the following separate bases of liability:

a. Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's gender and/or other protected characteristics, in violation of Government Code section 12940(a);

b. Harassing Plaintiff and/or creating a hostile work environment, in whole or in part on the basis of Plaintiff's gender and/or other protected characteristics, in violation of Government Code section 12940(j);

c. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on Plaintiff's gender, in violation of Government Code section 12940(h);

d. Retaliating against Plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, in violation of Government Code section 12940(h);

49. As a proximate result of defendants' willful, knowing, and intentional retaliation of Plaintiff, Plaintiff has sustained substantial losses of earnings and other employment benefits.

50. As a proximate result of defendants' willful, knowing, and intentional retaliation of Plaintiff, Plaintiff has suffered humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

51. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

52. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, entitling Plaintiff to punitive damages against defendants.

**FOURTH CAUSE OF ACTION**

**(Violation of Labor Code § 1102.5, *et. seq.*)**

**– Against Defendant ZLW, and Does 1-25)**

53. Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the Complaint as if fully set forth herein.

54. At all relevant times, Labor Code section 1102.5 was in effect and was binding on defendants. This statute prohibits defendants from retaliating against any employee, including Plaintiff, for raising complaints of illegality.

55. Plaintiff raised complaints of illegality while she worked for defendants, and defendants retaliated against her by discriminating against her, and taking adverse employment actions, including employment termination, against her.

56. As a proximate result of defendants' willful, knowing, and intentional violation of Labor Code section 1102.5, Plaintiff has suffered humiliation, emotional distress, and mental and physical anguish, all to her damage in a sum according to proof.

57. As a result of defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in a sum according to proof.

58. Defendants' misconduct was committed intentionally, in a malicious, oppressive manner, entitled Plaintiff to punitive damages against defendants.

**FIFTH CAUSE OF ACTION**

**(Wrongful Termination of Employment in Violation of Public Policy in Violation of Labor Code § 1102.5, FEHA, Government Code § 12900, *et. seq.*)**

**– Against Defendant ZLW, and Does 1-25)**

59. Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the Complaint as if fully set forth herein.

60. Defendants terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, Plaintiff's employment was terminated in part because of Plaintiff's protected statuses (gender) and because Plaintiff engaged in protected activities. These actions were in violation of FEHA and the California Constitution and California Labor Code section 1102.5.

61. As a proximate result of defendants' wrongful termination of Plaintiff's employment in violation of fundamental public policies, Plaintiff has suffered humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

62. As a result of defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered general and special damages in sums according to proof.

63. Defendants' wrongful termination of Plaintiff's employment was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

64. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure section 1021.5 and 1032, *et. seq.*, Plaintiff is entitled to recover reasonable attorneys' fees and costs in amount according to proof.

65. manner, entitling Plaintiff to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Camille Rodriguez, prays for judgment against Defendants, and each of them, as follows:

1. For general and special damages according to proof;
2. For exemplary damages according to proof;
3. For pre-judgment and post-judgment interest on all damages awarded;
4. For a declaratory judgment that the practices complained of in this Complaint are unlawful under California law;
5. An injunction against Defendants, their officers, agents, successors, employees, representatives, and any and all person acting in concert with them from engaging in each of the practices complained of in this Complaint;
6. For reasonable attorneys' fees;
7. For costs of the suit incurred herein; and
8. For such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Camille Rodriguez, hereby demands a jury trial for the causes of action set forth herein.

Dated: September 5, 2019

NEAL-LOPEZ LAW GROUP, PC

By: Tracy Neal-Lopez

TRACY NEAL-LOPEZ, ESQ.
Attorney for Plaintiff, Camille Rodriguez